**No. 423**

**First Circuit**

———

**PITCHER v. ERWIN**

———

(February 13, 1929. Opinion and Decree.)
(April 13, 1929. Rehearing Refused.)

——

Rownd and Warner, of Hammond, attorneys for plaintiff, appellee.

J. J. Jackson, of Hammond, attorney for defendant, appellant.

MOUTON, J. Pitcher, plaintiff, was driving a Whippet auto south from Hammond and Irwin, defendant, a Chrysler north towards Hammond. The autos collided on a concrete bridge a few miles south of Hammond.

Plaintiff is asking damages for injuries to his car, and so is defendant for injuries to his auto. Plaintiff recovered judgment for two hundred and sixty-five dollars ($265.00), with legal interest; the demand of defendant was denied.

Defendant has appealed.

Plaintiff got on the bridge first, and was then traveling at about thirty (30) miles an hour, not an excessive speed. He was driving on the west side of the bridge, his right hand side, and there is no testimony or fact to indicate that he deflected from that course, at any time, before the collision, or even after. He says, he first saw defendant when he got on the bridge, or was about getting on it, and that for the purpose of allowing sufficient room for the passage of defendant's car, he pressed his car to his right, westward, close to the side of the bridge. The fact is, that the side of the bridge was scraped by his auto, a physical fact confirmatory of plaintiff's statement. The exact spot where the impact occurred was approximately five or six feet north of the south end of the bridge.

Blades, a farmer of that section, says he was working in his field, situated a couple of hundred yards south of the bridge. He was then a few feet from the curbing of the highway on which defendant was coming from New Orleans. He says defendant was traveling at a very high speed, faster than he had ever noticed on that highway where over a hundred cars pass daily. His testimony is that defendant was flying. Such estimates are to be taken with caution as it is almost impossible by looking at a car passing to estimate accurately the celerity at which it is moving. As Blades lived near a highway where there was so much traffic, and as he had himself driven autos, it is reasonable to conclude that defendant was going, however, at an unusual speed. Blades testified that attracted as he was by the rapidity at which defendant's car was going, he kept his eye on it as it passed him going towards the bridge. He says when defendant's car neared the bridge, he saw when it turned to the left, and ran into the other car. He was one of the first, if not the first, to reach the scene of the accident. He examined the tracks made on the highway by defendant's car, and says that they deviated to the northwest. These marks on the roadway showed the sudden turning to the left of defendant's car, and have the effect of corroborating Blades' statement that he saw when the car deflected its course to the left from the right side where defendant was driving.

Parker, another witness for plaintiff, testifies that on the morning of the accident he was driving from New Orleans towards Hammond, which was the direction defendant was going. This witness says defendant was traveling at a high rate of speed as it appeared to him. He says when defendant passed ahead of him the dust flew up so thick he had to slow down to let it settle that he might be able to see ahead of his car. He estimates he was traveling at about twenty (20) miles an hour, and that defendant was going twice as fast. Again, we say, that such estimates of speed cannot be made with accuracy, but when a car passes ahead of another going in the same direction, an

estimate that it is going twice as fast as the car left behind, though not dependable to fix the rate of speed with certainty, may, however, be accepted as an approximate estimate of speed.

The testimony of Blades and Parker in reference to the excessive speed at which defendant was traveling is also supported by that of plaintiff on this subject.

Other witnesses, besides Blades and Parker, said they had examined the tracks of defendant's car which showed that it had gone to his left or westward when it neared the bridge. The plaintiff is positive that defendant suddenly swerved his car to his left and ran into his car inflicting the damages of which he complains. Plaintiff says defendant ran into the left side of his car, and so suddenly that it was impossible for him to change his course and avoid the impact.

The proof is that the left front door of the plaintiff's car was completely torn off, and the running board was stripped off on that side, the rear of the body being loosened from the frame.

All of the foregoing testimony which covers the vital issue in the case, makes it quite clear that defendant immediately before the accident, was driving at an excessive rate of speed, and in which there was no slacking, according to the testimony of the plaintiff, whose evidence was not contradicted in that respect by the facts of the case, or by the testimony of any of the witnesses, except defendant.

Even if it can be doubted that defendant was at fault in driving at a speed not commensurate with safety on approaching a bridge which the record shows was narrower than the highway, it is impossible, however, as appears from the record, to escape the conclusion that he suddenly turned to his left as he reached the bridge or got on it, and smashed into the auto of the plaintiff. The physical facts, taken in connection with the testimonial proof irresistibly lead to this finding of fact, no other is possible.

The defendant testifying on his own behalf says that plaintiff's car hit the culvert of the bridge, and that the impact which resulted from his driving into the west wall of the bridge, threw his car on his Chrysler, thus causing the damage. The proof is that neither the right front bumper nor the right front fender of plaintiff's car showed any marks, injury or abrasions.

If plaintiff had run in the west wall of the bridge as stated by defendant, the front part of his car on the right side would have shown the result of such an impact, so powerful, according to the defendant, that plaintiff's auto was thrown on his car, thus inflicting the damages which he claims in reconvention.

The cause of the accident which defendant contends resulted in the damage is not sustained by the evidence in the record, but which supports the contention of the plaintiff, that defendant was at fault when the collision occurred. The lower court so found and in which we find no reversible error.

The car of the plaintiff was worth about three hundred dollars ($300.00) before the accident, was practically demolished, leaving a value of ten dollars ($10.00) which was confined to the motor. He got judgment for two hundred and sixty-five dollars ($265.00), which is not excessive.